IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALEX OTERO,

    Plaintiff,

v.                                                    Civ. No. 12-1058 GBW/KBM

LANCE LONGHI and
NATHAN HARGER,

    Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants' Motion to Dismiss, *doc. 7*. Having reviewed the briefing, *docs. 10 &11*, the Court finds that Plaintiff has pled facts sufficient to make out constitutional violations under 42 U.S.C. § 1983, as well as tort claims under state law.  Because the Court finds that Defendants are not entitled to qualified immunity at this time, the Court denies Defendants' Motion.

**I.**      **BACKGROUND**

Plaintiff Alex Otero's home in Albuquerque shares a driveway with another house located behind it ("the rear dwelling").[1]  *Doc. 1* ¶¶ 8, 13.  On June 8, 2011, while Plaintiff and his mother were not at home, Defendants served a search warrant on the rear dwelling.  *Id*. ¶ 8.  The warrant was based on the belief that the residents of the rear dwelling were engaged in drug trafficking.  *Id*. ¶ 9.

---

[1] The Complaint does not make clear the nature of this second house.  For ease of reference, the Court will use the term used by Plaintiff in his Complaint—"rear dwelling."  *See doc. 1* ¶ 9.

1

Plaintiff alleges that, after having searched the rear dwelling and detained its occupants, Defendants hid and waited for additional persons involved in the drug activity to return to the rear dwelling. *Id*. ¶¶ 12, 14. As Plaintiff drove up the shared driveway in his truck, unmarked vehicles blocked the driveway in front of and behind Plaintiff's vehicle. *Id*. ¶ 16. Defendants, who were both allegedly wearing "ninja style" masks, stopped Plaintiff at gunpoint and ordered him to put his hands up and get out of his vehicle. *Id*. ¶¶ 17-19. At first, Plaintiff did not realize that Defendants were law enforcement officers due to their masks. *Id*. ¶ 22. He attempted to tell Defendants that he lived in the other house on the driveway. *Id*. ¶ 23.

Plaintiff claims that Defendants pulled him out of his vehicle while he was still wearing his seatbelt, threw him to the ground, and handcuffed him. *Id*. ¶¶ 24-25. Plaintiff admits that he then swore at Defendants. *Id*. ¶ 26. According to Plaintiff, Defendant Hargar said "you like to cuss eh" and pushed his boot into Plaintiff's back. *Id*. ¶ 28. Defendants then searched both Plaintiff and his vehicle. *Id*. ¶ 29. Upon determining that Plaintiff was not involved in any criminal activity, Defendant Longhi allegedly said "Do you and I have a problem with this? Cos I can take your whole family in if you do." *Id*. ¶¶ 30-31. After being released by Defendants, Plaintiff returned home and began to experience chest pains. *Id*. ¶ 33. His family called an ambulance and Plaintiff was taken to the hospital, where he remained overnight. *Id*. ¶¶ 35, 39.

**II.     STANDARDS OF REVIEW**

   **A. Motions to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. When ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and must view them in the light most favorable to the nonmoving party. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id*.

To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal alterations, citations, and quotations omitted); *see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).

### B. Qualified Immunity

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Choate v. Lemmings*, 294 F. App'x 386, 391 (10th Cir. 2008) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004)). To overcome the defense, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time" of the violation. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

**III.   ANALYSIS**

Defendants argue that Plaintiff's Complaint fails to allege facts sufficient to make out a constitutional violation and that they are therefore entitled to qualified immunity. *Doc. 7*. Their qualified immunity analysis addresses only the existence of a constitutional violation—Defendants do not argue that the relevant law is not clearly established. *Id*. at 8. The Court finds that Plaintiff has pled facts sufficient to state claims under the Fourth Amendment for illegal search and seizure and excessive force and under the New Mexico Tort Claims Act for false arrest and battery.

**A. Count I – Unlawful Search and Seizure in Violation of the Fourth Amendment**

In Count I, Plaintiff claims that Defendants' conduct in establishing a roadblock on his driveway, approaching him at gunpoint, pulling him out of the car, and handcuffing him amount to detention without reasonable suspicion and arrest without probable case in violation of the Fourth Amendment. *Doc. 1* ¶¶ 40-47. Defendants concede that Plaintiff was seized, but argue that the facts contained in Plaintiff's Complaint demonstrate that the seizure was lawful because it was an investigatory stop based on reasonable suspicion that never evolved into an arrest. *Doc. 7* at 10-11.

Even assuming, without deciding, that Plaintiff was merely temporarily detained pursuant to an investigatory stop and not arrested, Plaintiff has made out a plausible Fourth Amendment claim. An investigatory stop is reasonable if (1) it is "justified at its inception"—that is, an officer has reasonable suspicion that a person is involved in

5

criminal activity—and (2) the scope of the stop is "reasonably related . . . to the circumstances which justified the interference in the first place." *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Reasonable suspicion is a lower standard than the probable cause required for an arrest: it requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Terry*, 392 U.S. at 21. "In reviewing an investigatory stop for reasonable suspicion, we must consider 'the totality of the circumstances' of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Neff*, 681 F.3d 1134, 1138 (10th Cir. 2012) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

To justify the initial stop of Plaintiff, Defendants point to two factors that they argue support reasonable suspicion that Plaintiff was involved in the drug activity occurring in the rear dwelling: (1) "Defendants had just executed a search warrant for a serious drug trafficking incident" and were therefore engaged in a "high-intensity situation" at the time of the stop; and (2) upon approaching the officers, Plaintiff engaged in "aggressive and threatening behavior," including "cursing out the car-window." *Doc. 7* at 10-11. The Court cannot consider the second factor because it contradicts the facts as stated in Plaintiff's Complaint, which the Court must accept as true for purposes of this motion. Plaintiff admits to swearing at Defendants but says that he did not begin cursing until he was pulled from his car and thrown to the

6

ground. *Doc. 1* ¶¶ 18-26. Therefore, Defendants' sole justification for their initial stop of Plaintiff is his proximity to the house which they had just searched for illegal drugs pursuant to a warrant.

The Fourth Amendment requires that the police have "individualized, articulable suspicion of criminal activity" before they may stop a suspect. *Neff*, 681 F.3d at 1143. Here, Plaintiff's Complaint contains no facts that would support a reasonable belief that *Plaintiff* was involved in the drug activity occurring in the rear dwelling. Although Plaintiff was driving down a driveway toward the rear dwelling, Defendants were, or should have been, aware that another home, for which they did not have a warrant, shared that driveway. Nothing in the Complaint indicates a connection between the two homes. Beyond his mere presence in the driveway, there is also no indication that Plaintiff was associated with the drug activity in the rear dwelling or could have been reasonably mistaken for someone involved in that activity. Nor does it indicate that he behaved in a suspicious manner prior to the stop. As the Supreme Court held in *Illinois v. Wardlow*, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." 528 U.S. 119, 124 (2000); *see also United States v. Bohman*, 683 F.3d 861, 864-67 (7th Cir. 2012) (holding that fact that a car pulled out of a driveway of a suspected meth lab was not in and of itself sufficient to support reasonable suspicion to stop the car).

The Tenth Circuit considered a situation similar to that at issue here in *United States v. Maddox*, 388 F.3d 1356, 1363 (10th Cir. 2004). In *Maddox*, three officers served an arrest warrant on a suspect wanted for drug trafficking at her home. *Id*. at 1359. While they were in the home, a pick-up truck containing Mr. Maddox and two others pulled into the driveway. *Id*. The officers instructed them to remain in the carport. *Id*. Mr. Maddox began pacing, slowly getting further away from the carport. *Id*. The officers then detained Mr. Maddox for the remaining duration of the arrest. *Id*. at 1359-60. The court held that officers may detain a person who approaches the scene of a lawful arrest only if the officers reasonably believe that the individual poses a danger to them. *Id*. at 1363. It went on to find that the officers had reasonable suspicion that Mr. Maddox was dangerous based on a multitude of factors. Although the court listed as one factor the fact that the arrestee was a drug trafficker, it went on to list many other relevant factors including (1) the home where the arrest occurred was known for violent crime; (2) it was getting dark outside; (3) the officers were outnumbered; (4) the officers saw Mr. Maddox reach under the seat of his pick-up truck; and (5) it was unlikely that Mr. Maddox was visiting another home or merely passing through because the arrestee's home was the only house on the driveway. *Id*. at 1365-66. The court acknowledged the Supreme Court's holding in *Wardlow*, but found that these many other factors justified the detention. *Id*. at 1366-67.

Although this case involves a person approaching the scene of a search warrant rather than an arrest warrant, the same analysis applies—officers cannot stop the person without reasonable suspicion of their involvement in illegal activity. Unlike in *Maddox*, in which numerous other factors supported reasonable suspicion, here the only basis present on the face of Plaintiff's Complaint is the fact that Plaintiff was driving on the driveway leading to the rear dwelling. In fact, many of the factors at issue in *Maddox* are demonstrably missing in this case. Defendants were not outnumbered—the two officers were faced with either Plaintiff, who is disabled, alone, or Plaintiff and his elderly mother.[2] *See doc. 1* ¶ 6, 19. Defendants did not see Plaintiff engage in suspicious behavior prior to the stop and they were aware that another home, for which they did not have a warrant, shared the driveway. Thus, none of the additional circumstances that justified the detention in *Maddox* exist here based on the facts alleged in Plaintiff's complaint.

The Supreme Court has "recognized limited circumstances" in which a stop may be lawful despite the lack of individualized suspicion. *City of Indianapolis v. Edmunds*, 531 U.S. 32, 37 (2000) (listing examples). Defendants suggest that two apply here—the exceptions for certain types of roadblocks and checkpoints and for detention incidental to the execution of a search warrant. *Doc. 11* at 2-3. However, based on the facts in Plaintiff's Complaint, neither applies.

---

[2] It is unclear from the Complaint whether Plaintiff's elderly mother was in the truck with him when he was stopped by Defendants. *Doc. 1* ¶¶ 6-7, 15.

9

As for the roadblock exception, the Supreme Court has upheld suspicionless checkpoints only where "designed primarily to serve purposes closely related to the problems of policing the border or the necessity of ensuring roadway safety." *Edmunds*, 531 U.S. at 41. Checkpoints intended "to detect evidence of ordinary criminal wrongdoing" contravene the Fourth Amendment. *Id*. at 41-42 (holding narcotics checkpoints violative of Fourth Amendment because "[w]e cannot sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime"). There is nothing in Plaintiff's Complaint linking the roadblock to the border or traffic safety. The roadblock appears to have been used solely to detect involvement in the drug activity occurring at the rear dwelling.

Defendants also argue that the Supreme Court's decision in *Michigan v. Summers*, 452 U.S. 692 (1981), renders the stop lawful. In *Summers* the Court held that police may detain without reasonable suspicion occupants of the place being searched during the execution of a search warrant. 452 U.S. at 705. However, in *Bailey v. United States*, the Court limited an officer's authority to detain under *Summers* to "the immediate vicinity of a premises to be searched." 133 S. Ct. 1031, 1042 (2013). The Complaint does not make clear the length of the shared driveway, the distance between the two houses on it, or the location of Plaintiff's detention in relation to the rear dwelling. But viewing the facts in the light most favorable to Plaintiff, the Court must assume Plaintiff was not

in the immediate vicinity of the rear dwelling when he was stopped by Defendants and that the stop was not justified by *Summers*. It also appears from the Complaint that the search of the rear dwelling had been completed by the time of Plaintiff's stop. *Doc. 1* ¶ 14. Thus, the factors that justified detention in *Summers*—officer safety during the search, facilitating completion of the search, and preventing flight in the event incriminating evidence is found—were not present here. *See Summers*, 452 U.S. at 701-02; *Bailey*, 133 S. Ct. at 1038-41.

### B. Count II – Excessive Force in Violation of the Fourth Amendment

In Count II, Plaintiff alleges that Defendants used excessive force in violation of the Fourth Amendment "when they pulled Plaintiff from his truck, threw him to the floor and handcuffed him" and "when they threatened to take Plaintiff's family into custody if he had a problem with what they were doing." *Doc. 1* ¶¶ 50-51. Defendants argue that the use of force was reasonable in light of Plaintiff's "resistance and belligerent behavior." *Doc. 7* at 14.

The use of force in an investigatory stop or arrest is governed by the Fourth Amendment's reasonableness standard.[3] *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[T]he excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the

---

[3] Although the evidence for each may overlap, unlawful seizure and excessive force arising from a single encounter are two separate and independent claims. *Cortez v. McCauley*, 478 F.3d 1108, 1127 & n.23 (10th Cir. 2007). Thus, use of force can be lawful even if the underlying detention or arrest is unlawful. *Id*. at 1126-27.

11

circumstances of the case." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007). Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396-97. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

According to Plaintiff, Defendants (1) grabbed him while he was still seated in his vehicle wearing his seatbelt and pulled him out of the car; (2) threw him onto the ground; (3) handcuffed him; (4) pushed a boot into his back.[4] *Doc. 1* ¶¶ 24-28. This use of force was excessive in light of the circumstances described by Plaintiff. Prior to the application of force, Plaintiff had not engaged in any suspicious activity. *See* Section III.A, *supra*. But even if reasonable officers may have thought Plaintiff was involved in the drug trafficking occurring in the rear dwelling, there is no evidence that Plaintiff posed a threat to Defendants or attempted to resist or evade them. At most, the Complaint indicates that Plaintiff may have paused before complying with Defendants' orders to exit the truck due to his confusion as to the identities of Defendants. *Doc. 1* ¶¶ 20-22.

---

[4] Plaintiff also alleges that Defendants' threat to take his family into custody constituted excessive force. *Doc. 1* ¶ 51. While the Court recognizes that threats of physical force can constitute excessive force, *see Smith v. Wampler*, 108 F. App'x 560, 564-65 (10th Cir. 2004), it is unclear whether threats to harm third parties can also qualify as excessive force. Because the Court finds that Defendants' physical conduct toward Plaintiff could itself be found excessive, the Court need not decide this issue.

These facts resemble those in *Chidester v. Utah County*, 268 F. App'x 718 (10th Cir. 2008).  In that case, a SWAT team was attempting to execute a search warrant on a house suspected of containing illegal drugs and weapons.  *Id*. at 721.  The plaintiff lived in a neighboring house.  *Id*. at 722.  When the SWAT officers deployed flash-bang grenades, the plaintiff woke up and ran outside to see what was going on.  *Id*.  Officers saw him and told him to put his hands in the air and get onto the ground.  *Id*. at 723.  The plaintiff struggled to keep his hands in the air while getting to the ground.  *Id*.  An officer then tackled him while running at full speed and held him face down on the ground.  *Id*.  While acknowledging that a reasonable officer would recognize the plaintiff as a potential threat given the intensity of the situation, the Tenth Circuit found the tackling of the plaintiff unreasonable.  *Id*. at 727.  It noted that the SWAT team was aware of the neighboring house prior to the raid, that the plaintiff did not attempt to resist or flee, and that the officer was already pointing his gun at plaintiff prior to tackling him.  *Id*.

This case involves a significantly less tense situation than *Chidester* but a similar amount of force.  Like the officers in *Chidester*, Defendants were aware of the neighboring home, for which they did not have a search warrant.  They had their guns trained on Plaintiff prior to pulling him out of the truck.  And while, like Mr. Chidester, Plaintiff may not have fully and immediately complied with all of Defendant's commands, he did not resist or attempt to flee.  This case differs, however, in that

13

Defendants had control of the situation and thus even less justification for their use of force—they had already executed the search warrant and appear to have been lying in wait for others associated with the drug activity to approach the house. In light of these facts, throwing Plaintiff to the ground and stepping on his back was unreasonable. *Cf. Lund v. Salt Lake City Corp.*, 2008 WL 5119875, at *5-*8 (D. Utah 2008) (finding knocking suspect to the ground, handcuffing him, and dragging him to a bench constituted excessive force when the suspect brandished no weapon, was not actively resisting, and was being held at gunpoint prior to the use of force).

Under the facts in his Complaint, Plaintiff has set out a plausible Fourth Amendment excessive force claim. Defendants are therefore not entitled to qualified immunity from this claim at this time.

### C. Count III – Battery and False Arrest Under the New Mexico Tort Claims Act

Plaintiff's final count arises under the New Mexico Tort Claims Act (NMTCA). Defendants assert the defense of qualified immunity as to Plaintiff's NMTCA claims as well as his constitutional claims.[5] *Doc. 7* at 16. Plaintiff argues that qualified immunity does not apply to claims under the NMTCA, citing *Todd v. Montoya*, 877 F. Supp. 2d 1048, 1105-06 (D.N.M. 2012). *Doc. 10* at 12. The New Mexico Supreme Court and Court of Appeals have not decided this issue; nor has the Tenth Circuit addressed it. Assuming, without deciding, that qualified immunity applies to NMTCA claims and

---

[5] The Court notes that Defendants cite no case law to support their contention that they have qualified immunity under New Mexico law against claims brought under the NMTCA.

14

that Plaintiff therefore has the burden of pleading facts sufficient to demonstrate that Defendants plausibly committed false arrest and battery, the Court finds Plaintiff has met this burden.

Plaintiff alleges that Defendants committed false arrest and battery when they pulled Plaintiff from his truck, threw him to the ground, handcuffed him, and stepped on his back. *Doc. 1* ¶¶ 56-58. In New Mexico, false arrest "consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." N.M. Stat. § 30-4-3. Defendants do not contend that they did not restrain Plaintiff without his consent. Rather, they argue that because they had reasonable suspicion to detain Plaintiff, they also had lawful authority to detain him. *Doc. 7* at 15. As the Court has found that, based on the facts in Plaintiff's Complaint, Defendants did not have reasonable suspicion or probable cause to detain Plaintiff, this argument fails. *See* Section III.A, *supra*.

As for the battery claim, Defendants argue that Plaintiff has failed to assert facts demonstrating the requisite intent. *Doc. 7* at 16. "Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." N.M. Stat. § 30-3-4. Contrary to Defendants' interpretation, the statute requires only that the perpetrator intend to apply force; he need not intend to

cause injury.[6]  *See State v. Nozie*, 207 P.3d 1119, 1131-32 (N.M. 2009); *Tanberg v. Sholtis*, 401 F.3d 1151, 1168 (10th Cir. 2005).  The facts pled by Plaintiff indicate that the contact between Defendants and Plaintiff was entirely intentional.

## IV.  CONCLUSION

Plaintiff has pled facts sufficient to state § 1983 claims for unlawful seizure and excessive force under the Fourth Amendment and false arrest and battery under the New Mexico Tort Claims Act.  Therefore, Defendants are not entitled to qualified immunity at this time and their Motion to Dismiss, *doc. 7*, is DENIED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**

---

[6] Under New Mexico law, a police officer is not liable for battery if he acted in good faith and only used the force reasonably necessary under the circumstances.  *Jonas v. Bd. of Comm'rs of Luna County*, 699 F. Supp. 2d 1284, 1297 (D.N.M. 2010) (citing *State v. Gonzales*, 642 P.2d 210, 213 (N.M. Ct. App. 1982)).  As discussed above, under the facts pled by Plaintiff, a reasonable factfinder could conclude that Defendants used unreasonable force.